# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

RASHARD CHARLES CONNER,

    Plaintiff,

v.

MARTY ALLEN; ROBERT TOOLE; SGT NORRIS HERNDON; JOSEPH HUTCHESON; and VALARIE JACKSON,[1]

    Defendants.

CIVIL ACTION NO.: 6:17-cv-10

## **ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, an inmate at Georgia State Prison in Reidsville, Georgia, filed the above-captioned action pursuant to 42 U.S.C. § 1983. (Doc. 1.) Plaintiff also filed and was granted a Motion for Leave to Proceed *in Forma Pauperis*. (Docs. 2, 3.) After an initial review of Plaintiff's Complaint, the Court deferred formal frivolity review and directed Plaintiff to file an Amended Complaint. (Doc. 7.) Plaintiff has since filed his Amended Complaint. (Doc. 8.)

For the reasons set forth below, I find Plaintiff plausibly states colorable: Eighth Amendment excessive force and failure to intervene claims against Defendant Herndon; First Amendment retaliation claims against Defendants Jackson, Hutcheson, Allen, and Toole; and Fourteenth Amendment procedural due process claims against Defendants Jackson, Hutcheson, Allen, and Toole. However, I **RECOMMEND** that the Court **DISMISS** Plaintiff's official capacity claims against all Defendants, as well as Plaintiff's access-to-courts and substantive due process claims against Defendants Jackson, Hutcheson, Allen, and Toole. The Court **DIRECTS**

---

[1] In his Amended Complaint, Plaintiff names a "Joseph Hutcheson" as a Defendant, not Joseph Hutchenson. (Doc. 8, pp. 1, 3.) Accordingly, the Court **AUTHORIZES** and **DIRECTS** the Clerk of Court to change the name of Defendant Joseph Hutchenson to Joseph Hutcheson upon the docket and record of this case.

the United States Marshal to serve Defendants Herndon, Jackson, Hutcheson, Allen, and Toole with a copy of this Order and Plaintiff's Complaint.

## PLAINTIFF'S ALLEGATIONS[2]

On September 30, 2016, Defendant Herndon excessively pepper sprayed Plaintiff while he was on his back protecting himself from the attack of another inmate, Tommy Best. (Doc. 8, pp. 6–7.) Plaintiff contends that Defendant Herndon should have tried to protect him from Best but instead made the situation worse by spraying Plaintiff. Defendant Herndon's pepper spray blinded Plaintiff and allowed Best to take unimpeded shots at Plaintiff's face, causing him exacerbated harm.

Plaintiff was placed in administrative segregation and given a disciplinary report for allegedly fighting with Best. Defendant Allen later expunged Plaintiff's disciplinary report due to Defendant Herndon giving "false factual statements," but Plaintiff remained in segregation, under a behavioral modification program, because Defendants Jackson and Hutcheson wanted to "silence" him and also because of prior infractions. Plaintiff further alleges that Defendants Allen and Toole denied Plaintiff's challenge to his placement in Tier II segregation because they also wanted to silence Plaintiff and prevent him from reporting his claims against Defendant Herndon. (Id.)

Plaintiff argues that Defendant Herndon's assault by pepper spray not only worsened the harm from Best's attack but also caused the onset of a mental health adjustment disorder because it triggered mental trauma from a prior prison attack. (Id. at p. 8.) Plaintiff alleges his food portions have been restricted while in Tier II, causing weight loss, and that his sentence duration could be lengthened due to his inability to meet parole requirements while on the behavioral

---

[2] The below recited facts are taken from Plaintiff's Amended Complaint and are accepted as true, as they must be at this stage.

2

modification program.  (Id. at pp. 8, 10.)  In addition to the mental trauma, Plaintiff alleges that the attack from Best and Defendant Herndon caused physical injuries to his eyes and face, and worsened his medical handicaps.  (Id. at p. 10.)  As relief, Plaintiff seeks compensatory damages in the amount of three million dollars.  (Id. at p. 11.)

## STANDARD OF REVIEW

Plaintiff brings this action *in forma pauperis*.  (Docs. 2, 3.)  Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets and shows an inability to pay the filing fee and also includes a statement of the nature of the action which shows that he is entitled to redress.  Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous or malicious, or fails to state a claim upon which relief may be granted.  28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii).  Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity.  Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous or malicious, or fails to state a claim upon which relief may be granted or which seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b).

When reviewing a complaint on an application to proceed *in forma pauperis*, the Court is guided by the instructions for pleading contained in the Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances).  Further, a claim is frivolous under Section 1915(e)(2)(B)(i) "if it is 'without

arguable merit either in law or fact.'" Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys . . . .") (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

**DISCUSSION**

**I.     Dismissal of Official Capacity Claims**

Plaintiff cannot sustain a Section 1983 claim for monetary damages against Defendants in their official capacities. States are immune from private suits pursuant to the Eleventh Amendment and traditional principles of state sovereignty. Alden v. Maine, 527 U.S. 706, 712–13 (1999). Section 1983 does not abrogate the well-established immunities of a state from suit without its consent. Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989). Because a lawsuit against a state officer in his official capacity is "no different from a suit against the [s]tate itself," such a defendant is immune from suit under Section 1983. Id. at 71. Here, the State of Georgia would be the real party in interest in a suit against Defendants in their official capacities as employees of the Georgia Department of Corrections. Accordingly, the Eleventh Amendment immunizes these actors from suit in their official capacities. See Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989). Without a waiver of that immunity, which is absent in this case, Plaintiff cannot sustain any constitutional claims against Defendants in their official capacities for monetary relief. Thus, the Court should **DISMISS** these claims.

**II.    Excessive Force Claim against Defendant Herndon**

The Eighth Amendment's proscription against cruel and unusual punishment governs the amount of force that prison officials are entitled to use against inmates. Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). An excessive force claim has two requisite parts: an objective and a subjective component. Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994). In order to satisfy the objective component, the inmate must show that the prison official's conduct was "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The subjective component requires a showing that the force used

was "maliciously and sadistically for the very purpose of causing harm" rather than "a good faith effort to maintain or restore discipline." Whitley v. Albers, 475 U.S. 312, 320–21 (1986). In order to determine whether the force was used for the malicious and sadistic purpose of causing harm or whether the force was applied in good faith, courts consider the following factors: (1) the need for the exercise of force, (2) the relationship between the need for force and the force applied, (3) the extent of injury that the inmate suffered, (4) the extent of the threat to the safety of staff and other inmates, (5) and any efforts taken to temper the severity of a forceful response. Skelly v. Okaloosa Cty. Bd. of Cty. Comm'rs, 456 F. App'x 845, 848 (11th Cir. 2012) (per curiam) (quoting Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009)).

Plaintiff contends that Defendant Herndon used excessive force by spraying Plaintiff with pepper spray without justification. Plaintiff asserts that he was attacked by Best, "never threw one punch," and was on the ground shielding himself from Best when Defendant Herndon doused him in pepper spray. (Doc. 1, p. 6.) Defendant Herndon's actions allegedly exposed Plaintiff to more harm from Best, caused physical injuries to his eyes and face, and triggered mental trauma. (Id. at p. 10.) Although Defendant Herndon may very well have had a legitimate need to intervene in the altercation to eliminate a safety threat, at this early stage of the litigation, and construing the facts in Plaintiff's favor, Plaintiff has stated a plausible excessive force claim.

Accordingly, Plaintiff's excessive force claim survives frivolity review and shall proceed against Defendant Herndon in his individual capacity.

## III. Failure to Intervene Claim against Defendant Herndon

The Eighth Amendment "imposes a duty on prison officials" to "take reasonable measures to guarantee the safety of the inmates." Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099–100 (11th Cir. 2014). While "[p]rison officials have a duty . . . to protect prisoners

from violence at the hands of other prisoners," not "every injury suffered by one prisoner at the hands of another" results in constitutional liability. Purcell ex rel. Estate of Morgan v. Toombs County, 400 F.3d 1313, 1319 (11th Cir. 2005) (quoting Farmer, 511 U.S. at 1319). Rather, a prison official must be faced with a known risk of injury that rises to the level of a "strong likelihood rather than a mere possibility" before his failure to protect an inmate can be said to constitute deliberate indifference. Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990).

Plaintiff raises a deliberate indifference claim for Defendant Herndon's failure to intervene in Best's attack on Plaintiff. "Prison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence." Terry v. Bailey, 376 F. App'x 894, 896 (11th Cir. 2010) (per curiam) (citing Ensley v. Soper, 142 F.3d 1402, 1407 (11th Cir. 2010);[3] see also Murphy v. Turpin, 159 F. App'x 945, 948 (11th Cir. 2005) (per curiam) (applying deliberate indifference standard to claim that prison official failed to intervene in inmate-on-inmate assault). "However, in order for liability to attach, the officers must have been in a position to intervene." Terry, 376 F. App'x at 896 (citation omitted).

Plaintiff contends that he was pinned down on his back by Best, defending himself from Best's blows, when Defendant Herndon arrived and doused Plaintiff with pepper spray rather than attempting to protect him. (Doc. 8, pp. 6, 7.) Further, Plaintiff claims that Defendant's action harmed Plaintiff's face and allowed Best to land unimpeded punches. (Id.) These facts

---

[3] In Johnson v. Boyd, the Eleventh Circuit Court of Appeals noted that it has "not explicitly adopted [the "failure to intervene"] holding [in Ensley] in a situation involving an officer observing a fight between inmates." 568 F. App'x 719, 722 n.2 (11th Cir. 2014) (per curiam). But see Johnson v. Boyd, 701 F. App'x 841, 846–47 (11th Cir. 2017) (per curiam) (acknowledging that Ensley has not been directly applied to situations where an officer failed to intervene in violence between inmates but finding a plausible Eighth Amendment deliberate indifference claim premised on an officer's failure to intervene in an inmate's attack on a fellow inmate (citing Farmer, 511 U.S. at 842; Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 620 (11th Cir. 2007)).

7

show Defendant Herndon knew Plaintiff was being attacked and was in a position to intervene but instead decided to use pepper spray on Plaintiff. Accordingly, Plaintiff states a plausible failure to intervene claim and it shall proceed against Defendant Herndon in his individual capacity.

**IV.    Retaliation Claims against Defendants Jackson, Hutcheson, Allen, and Toole**

It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011). It is also established that an inmate may maintain a cause of action against prison administrators who retaliate against him for making such complaints. Id. (quoting Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008) (internal citation and punctuation omitted)). "To establish a First Amendment retaliation claim, a prisoner need not allege the violation of an additional separate and distinct constitutional right; instead, the core of the claim is that the prisoner is being retaliated against for exercising his right to free speech." O'Bryant, 637 F.3d at 1212. "To prevail, the inmate must establish these elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." Smith, 532 F.3d at 1276 (citing Bennett v. Hendrix, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)).

Plaintiff alleges that Defendants Jackson, Hutcheson, Allen, and Toole retaliated against Plaintiff by keeping him in Tier II segregation in an effort to "silence" his complaints about Defendant Herndon's alleged excessive force and failure to intervene in Best's attack. (Doc. 8,

pp. 7, 8.) Plaintiff also contends Defendants Allen and Toole summarily denied his grievances about being silenced. (Id.) Accordingly, because Plaintiff suffered adverse action as a result of his grievance and desire to report Defendant Herndon's misconduct, his retaliation claims survive frivolity review and shall proceed against Defendants Jackson, Hutcheson, Allen, and Toole. However, the Court forewarns Plaintiff that in order to successfully maintain these claims against Defendants noted above, Plaintiff will have to show sufficient retaliation facts, specifically as to how each Defendant retaliated against Plaintiff due to his protected speech regarding Defendant Herndon.[4]

## V.     Due Process Claims against Defendants Jackson, Hutcheson, Allen, and Toole

### A.     Procedural Due Process

Plaintiff argues that he has been confined in disciplinary segregation without due process of law. A Section 1983 action alleging a procedural due process violation requires proof of three elements: "deprivation of a constitutionally-protected liberty or property interest; state action; and constitutionally-inadequate process." Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994). The Eleventh Circuit Court of Appeals has identified two situations in which a prisoner—already deprived of liberty in the traditional sense—can be further deprived of liberty such that procedural due process protections are required: (1) when there is a "change in the prisoner's conditions of confinement so severe that it essentially exceeds the sentence imposed by the court"; and (2) when the State has consistently given a benefit to prisoners, usually through a statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Kirby

---

[4] To the extent Plaintiff claims these Defendants' alleged retaliation precluded his access to courts, the Court should **DISMISS** those claims because Plaintiff has yet to suffer an actual injury. See Lewis v. Casey, 518 U.S. 343, 356 (1996) (to state an access-to-courts claim, a plaintiff must show "that an actionable claim . . . has been lost or rejected, or that the presentation of such a claim is currently being prevented").

v. Siegelman, 195 F.3d 1285, 1291 (11th Cir. 1999) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).

Plaintiff argues Defendants Jackson, Hutcheson, Allen, and Toole have kept him in Tier II segregation for over nine months, under a behavioral modification program, in an effort to "silence" his complaints about Defendant Herndon's actions, even after his disciplinary report from this incident was expunged due to Herndon's false factual statements. (Doc. 8, pp. 6, 7.) Plaintiff contends that Defendant Hutcheson "assigned" Plaintiff to Tier II without process and that Defendants Allen and Toole have kept him there without explanation. (Id. at p. 7.) Furthermore, Plaintiff implies that Defendant Jackson used prior infractions as pretextual reasons to keep Plaintiff in Tier II under the behavioral program. (Id.) As a result of these Defendants actions, Plaintiff claims he has been deprived adequate food and denied the chance at parole due to his placement in Tier II confinement. (Id. at p. 10.)

At this stage of the litigation, Plaintiff's allegations of insufficient food and denial of parole opportunities could plausibly establish his placement in the Tier II unit was punitive in nature and that the conditions in Tier II imposed an atypical and significant hardship. Further, Plaintiff's allegations plausibly establish his Tier II status was occasioned without any due process of law: Defendants Jackson, Hutcheson, Allen, and Toole placed Plaintiff in the Tier II unit pursuant to a false disciplinary report, purportedly without a hearing, and have kept him there without review to silence him, even after his disciplinary report was expunged.

Accordingly, Plaintiff arguably states a cognizable procedural due process claim against Defendants Jackson, Hutcheson, Allen, and Toole, and those claims will proceed.

### B. Substantive Due Process

The substantive component of the Due Process Clause "provides heightened protection against government interference with certain fundamental rights." Washington v. Glucksberg, 521 U.S. 702, 718–19 (1997) (internal citations omitted). If Plaintiff has a fundamental right, then the government may not infringe on that right unless it proves that the limitation is "narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). To establish a substantive due process right beyond those already recognized by precedent, a claimant must show that the asserted fundamental liberty interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if [the interest] was sacrificed." Kerry v. Din, 576 U.S. ___, ___, 135 S. Ct. 2128, 2134 (2015) (quoting Glucksberg, 521 U.S. at 720–21).

Here, Plaintiff ostensibly claims that he has a fundamental right to not be administratively segregated from the prison's general population. This right is not already enumerated within the Supreme Court's "substantive-due-process line of cases." Id. at ___, 135 S. Ct. at 2135. Moreover, the Supreme Court's decisions "have consistently refused to recognize more than the most basic liberty interests in prisoners." Hewitt v. Helms, 459 U.S. 460, 467 (1983). These basic interests do not include freedom from more adverse conditions of confinement. Meachum v. Fano, 427 U.S. 215, 224–25 (1976). Thus, there is no "objectively, deeply rooted" history and practice in this Nation to be free from administrative segregation or even a segregation with more adverse conditions, and thus, no fundamental liberty right.

Accordingly, Plaintiff fails to state a cognizable substantive due process claim, and the Court should **DISMISS** Plaintiff's substantive due process claims.

**CONCLUSION**

For the reasons set forth above, I find Plaintiff plausibly states colorable: Eighth Amendment excessive force and failure to intervene claims against Defendant Herndon; First Amendment retaliation claims against Defendants Jackson, Hutcheson, Allen, and Toole; and Fourteenth Amendment procedural due process claims against Defendants Jackson, Hutcheson, Allen, and Toole. However, I **RECOMMEND** that the Court **DISMISS** Plaintiff's official capacity claims against all Defendants, as well as Plaintiff's access-to-courts and substantive due process claims against Defendants Jackson, Hutcheson, Allen, and Toole. The Court **DIRECTS** the United States Marshal to serve Defendants with a copy of this Order and Plaintiff's Complaint.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United

States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

## REMAINING CLAIMS AND DEFENDANTS

Plaintiff's allegations in his Complaint arguably state colorable claims for relief against Defendants Toole and Allen under 42 U.S.C. § 1983. Consequently, a copy of Plaintiff's Complaint and a copy of this Order shall be served upon these Defendants by the United States Marshal without prepayment of cost. The Court also provides the following instructions to the parties that will apply to the remainder of this action and which the Court urges the parties to read and follow.

## INSTRUCTIONS TO DEFENDANTS

Because Plaintiff is proceeding *in forma pauperis*, the undersigned directs that service be effected by the United States Marshal. Fed. R. Civ. P. 4(c)(3). In most cases, the marshal will first mail a copy of the complaint to the Defendant by first-class mail and request that the Defendant waive formal service of summons. Fed. R. Civ. P. 4(d); Local R. 4.7. Individual and corporate defendants have a duty to avoid unnecessary costs of serving the summons, and any such defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver. Fed. R. Civ. P. 4(d)(2). Generally, a defendant who timely returns the waiver is not required to answer the complaint until sixty (60) days after the date that the marshal sent the request for waiver. Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that Defendants are hereby granted leave of court to take the deposition of the Plaintiff upon oral examination. Fed. R. Civ. P. 30(a). Defendants are

further advised that the Court's standard 140 day discovery period will commence upon the filing of the last answer. Local Rule 26.1. Defendants shall ensure that all discovery, including the Plaintiff's deposition and any other depositions in the case, is completed <u>within that discovery period</u>.

In the event that Defendants take the deposition of any other person, Defendants are ordered to comply with the requirements of Federal Rule of Civil Procedure 30. As the Plaintiff will likely not be in attendance for such a deposition, Defendants shall notify Plaintiff of the deposition and advise him that he may serve on Defendants, in a sealed envelope, within ten (10) days of the notice of deposition, written questions the Plaintiff wishes to propound to the witness, if any. Defendants shall present such questions to the witness seriatim during the deposition. Fed. R. Civ. P. 30(c).

### **INSTRUCTIONS TO PLAINTIFF**

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants or, if appearance has been entered by counsel, upon their attorneys, a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to Defendants or their counsel. Fed. R. Civ. P. 5. "Every pleading shall contain a caption setting forth the name of the court, the title of the action, [and] the file number." Fed. R. Civ. P. 10(a).

Plaintiff is charged with the responsibility of immediately informing this Court and defense counsel of any change of address during the pendency of this action. Local R. 11.1. Plaintiff's failure to notify the Court of a change in his address may result in dismissal of this case.

Plaintiff has the responsibility for pursuing this case. For example, if Plaintiff wishes to obtain facts and information about the case from Defendants, Plaintiff must initiate discovery. See generally Fed. R. Civ. P. 26 *et seq*. The discovery period in this case will expire 140 days after the filing of the last answer. Local R. 26.1. Plaintiff does not need the permission of the Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within this time period. Local R. 26.1. Discovery materials should **not** be filed routinely with the Clerk of Court; exceptions include: when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial. Local R. 26.4.

Interrogatories are a practical method of discovery for incarcerated persons. See Fed. R. Civ. P. 33. Interrogatories may be served only on a <u>party</u> to the litigation, and, for the purposes of the instant case, this means that interrogatories should not be directed to persons or organizations who are not <u>named</u> as Defendants. Interrogatories are not to contain more than twenty-five (25) questions. Fed. R. Civ. P. 33(a). If Plaintiff wishes to propound more than twenty-five (25) interrogatories to a party, Plaintiff must have permission of the Court. If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorneys for Defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery. Fed. R. Civ. P. 26(c); 37(a)(2)(A); Local R. 26.7.

Plaintiff has the responsibility for maintaining his own records of the case. If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per page. **If Plaintiff seeks copies, he should request them directly**

**from the Clerk of Court and is advised that the Court will authorize and require the collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press his case forward, the court may dismiss it for want of prosecution. Fed. R. Civ. P. 41; Local R. 41.1.

It is Plaintiff's duty to cooperate fully in any discovery which may be initiated by Defendants. Upon no less than five (5) days' notice of the scheduled deposition date, the Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath or solemn affirmation, any question which seeks information relevant to the subject matter of the pending action. Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, including dismissal of this case.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order. A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is required to prepare and file his own version of the Proposed Pretrial Order. A plaintiff who is incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

### ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within fourteen (14) days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Local R. 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendants'

motion. Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within twenty-one (21) days after service of the motion. Local R. 7.5, 56.1. The failure to respond to such a motion shall indicate that there is no opposition to the motion. Furthermore, each material fact set forth in the Defendants' statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should Defendants file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine dispute as to any material fact in this case. That burden cannot be carried by reliance on the conclusory allegations contained within the complaint. Should the Defendants' motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest the Defendants' statement of the facts. Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in Defendants' affidavits will be accepted as true and summary judgment may be entered against the Plaintiff pursuant to Federal Rule of Civil Procedure 56.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 25th day of May, 2018.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA